```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:10-cr-20219-JPM-cgc |
| ) | |
| DONNELL FROST, SR., ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Donnell Frost, Sr.'s ("Defendant") Motion to Suppress (Docket Entry ("D.E.") 23), filed September 3, 2010. The Court referred the motion to the Magistrate Judge for Report and Recommendation on September 9, 2010. (D.E. 24.) The Magistrate Judge held a hearing on the motion on October 12, 2010. (D.E. 27.) The Report and Recommendation was received on March 14, 2011. (D.E. 43.)

The Magistrate Judge recommended that the Court deny Defendant's motion. (Report & Recommendation ("Rep. & Rec.") (D.E. 43) 1.) Defendant filed his objections on March 28, 2011. (D.E. 45.) The Government responded on April 1, 2011. (D.E. 46.) After de novo review, the Court ADOPTS the Report and Recommendation in its entirety and DENIES the motion to suppress.

## I. Background

Defendant is charged in a one-count indictment with possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). (D.E. 1.) He seeks to suppress "any evidence gathered as a result of the warrantless search of [Defendant's] home on or about January 10, 2010, as well as any statement given to the officers subsequent to the search . . . ." (Mot. to Suppress (D.E. 23) 1.)

### a. Credibility Determination

The Court notes at the outset that the Magistrate Judge chose to discredit Defendant's testimony. (Rep. & Rec. 4.) Defendant has multiple prior felony convictions; moreover, Defendant admitted on cross-examination that he asked his girlfriend, Linda Anderson ("Anderson"),[1] and his son, Donnell Frost, Jr., to lie on his behalf in this case. (Hr'g Test. of Donnell Frost, Sr. ("Def.'s Test.") 70-71 ("I said they [Anderson and Donnell Frost, Jr.] could have took the charge.").)

The Court has reviewed the October 12, 2010 hearing transcript. The Magistrate Judge was in the best position to evaluate Defendant's credibility (or lack thereof), and the transcript "provides 'no compelling reason to second-guess the

---

[1] Anderson is Donnell Frost, Jr.'s mother. (Hr'g Test. of Linda Anderson ("Anderson Test.") 48.)

2

magistrate judge's decision.'"  United States v. Freeman, No. 08-5677, 2010 WL 4244268, at *9 (6th Cir. Oct. 19, 2010); see also United States v. Lowe, No. 3:09-CR-110, 2010 WL 1491417, at *1 (E.D. Tenn. Apr. 12, 2010) ("The court will defer to the credibility finding[s] by the magistrate judge who had an opportunity to evaluate the demeanor and consistency of the witnesses' testimony."); United States v. Brown, No. 1:07-CR-9, 2007 WL 1345463, at *1 (E.D. Tenn. May 7, 2007) ("Credibility determinations of the magistrate judge . . . should be accepted by a district judge unless . . . he finds a reason to question the magistrate judge's assessment.").  After reviewing the record, the Court agrees with the Magistrate Judge's decision to discredit Defendant's testimony.  Accordingly, no rehearing is required.

### b. Underlying Facts

On January 10, 2010, Donnell Frost, Jr. ("Frost Jr.") walked into his parents' house[2] at 4248 Navaho Avenue in Memphis, Tennessee to get some school clothes.  (Frost Jr. Test. 7.)  On his way out of the house, Frost Jr. borrowed his mother's (Anderson's) cellular phone.  (Id. at 8.)  Frost Jr. walked out the door; his father (Defendant) followed him outside.  (Id.)  Defendant asked Frost Jr. to return the phone.  (Id.)  Frost Jr.

---

[2] Frost Jr. lived with his aunt at that time. (Hr'g Test. of Donnell Frost, Jr. ("Frost Jr. Test.") 7.)

3

refused.  (Id.)  Defendant and his son began to fight.  (Id. at 8-9.)  They exchanged punches, and Defendant slammed his son to the ground.  (Id. at 9.)  Frost Jr. got up and walked away.  (Id.)  Defendant went back into his house to retrieve a gun.  (Id. at 17.)  Frost Jr. looked back and saw his father aim the gun at him.  (Id.)  Defendant fired one shot at Frost Jr.  (Id. at 17-18).  The shot missed him.  (Id. at 17.)

Frost Jr. called the police to report the incident.  Memphis Police Department officers Guy Hendree ("Hendree"), James Archie ("Archie") and Evans[3] responded to the call.  (Hr'g Test. of Guy Hendree ("Hendree Test.") 22.)  The officers met Frost Jr. at the intersection of Navaho Avenue and Claudette Road.  (Id.)  Frost Jr. told them about the fight and the gunshot.  (Frost Jr. Test. 9.)  The officers told Frost Jr. to stay where he was.  (Hendree Test. 27.)  The officers then drove to Defendant's house.  They parked some distance away from the house for their own safety.  (See id. (explaining the typical response to a call involving an armed suspect).)  Hendree considered the situation to be "pretty dangerous."  (Id.)

The officers approached the side door of Defendant's house.  (Id. at 23.)  Hendree led the group of officers.  (Id. at 29.)  Archie and Evans followed.  (Hr'g Test. of James Archie ("Archie Test.") 37.)  Hendree's weapon was drawn; Archie's was not.

---

[3] Evans' first name does not appear in the hearing transcript.

4

(Hedree Test. 28; Archie Test. 40.)  Hendree knocked on the door and yelled "police."  (Hendree Test. 28.)  Defendant opened the door.  (Id.)  Hendree grabbed Defendant.  (Id. at 29.)  This resulted in a "brief struggle."  (Id. at 30.)  Defendant was eventually handcuffed and placed in the back of a squad car.  (Id. at 29.)

The officers returned to the house to obtain Anderson's consent to search.  (Anderson Test. 50.)  Anderson told them that the house did not belong to her and to "go outside and ask [Defendant]."  (Id.)  The officers went outside to get Defendant's consent.  (Id.)  Hendree returned and told Anderson that Defendant had orally consented.[4]  (Id. at 51.)  Hendree searched the house and found a gun wedged between the mattress and the box spring of Defendant's bed.  (Hendree Test. 25.)  Frost Jr. testified that the gun belonged to Defendant.  (Frost Jr. Test. 12.)

**II. Standard of Review**

"A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).  After reviewing the evidence, the Court is free to accept, reject, or

---

[4] Defendant refused to sign a consent-to-search form.  (Archie Test. 39.)  Nevertheless, Defendant told the officers that "he didn't have any firearms, he didn't fire no shots [sic], and that [the officers] could search his house all [they] wanted."  (Hendree Test. 25; see also Archie Test. 39 ("But you can go into the house because I have nothing to hide.").)

5

modify the proposed findings or recommendations.  28 U.S.C. §636(b)(1)(C).  The Court need not review those aspects of the Report and Recommendation to which no objection has been made.  Thomas v. Arn, 474 U.S. 140, 150 (1985).  The Court should adopt the findings and recommendations to which there is no objection.  Id.; see also United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

### III. Analysis

The Magistrate Judge recommended that the motion to suppress be denied.  (Rep. & Rec. 1.)  In doing so, she proposed the following conclusion of law: (1) exigent circumstances justified the warrantless arrest of Defendant; and (2) Defendant's oral consent to the warrantless search was voluntary and unequivocal.  (Id. at 10-12.)

#### a. Defendant's Objections to Proposed Findings of Fact

Defendant contends that the testimony of Hendree and Archie differed significantly.  (Def.'s Objs. to Magistrate's Report and Recommendations on Mot. to Suppress ("Def.'s Objs.") (D.E. 45) 3.)  Defendant points to several inconsistencies between the officers' recollections of the events of January 10, 2010.  (Id.)  For example, Hendree testified that all three officers had their weapons drawn as they approached Defendant's house.  (Hendree Test. 28 ("All three [had their weapons drawn], as far as I remember.").)  Archie, however, testified that his weapon

6

was holstered.  (Archie Test. 41.)  The inconsistencies identified by Defendant, however, are immaterial and easily explained.  Archie acknowledged on redirect examination that his memory regarding the events of January 10, 2010 was hazy.  (Id. at 45.)  Moreover, Archie testified that his role was minimal.  (Id. at 45-46.)  Hendree, not Archie, arrived at the side door first.  (Id. at 45.)  Hendree, not Archie, asked Defendant for consent to search.  (Id. at 46.)  Accordingly, this set of objections is OVERRULED.

Defendant also points to the inconsistent testimony regarding the location and timing of Defendant's oral consent.  (Def.'s Objs. 3-4.)  Hendree testified that the officers did not enter Defendant's house until after Defendant had been handcuffed and placed in a squad car.  (Hendree Test. 30.)  Hendree stated that he asked Defendant for consent to search after Anderson told Hendree that she did not own the house.  (Id.)  Hendree could not remember whether Anderson was indoors or outdoors when she made the statement.  (Id. at 31.)  The Court notes that the witnesses' testimony is generally consistent regarding the timing of the search.  Anderson, Frost, and Hendree testified that (1) Anderson was asked for her consent to search; (2) she told Hendree that the house was not hers; and (3) Hendree then asked Defendant for consent to

7

search.  (Anderson Test. 50; Frost Jr. Test. 19-20; Hendree Test. 30-31.)  Accordingly, this objection is OVERRULED.

### b. Defendant's Objections to Proposed Conclusions of Law

Defendant offers two objections to the Magistrate Judge's proposed conclusions of law.  First, Defendant argues that no exigent circumstances were present.  (Def.'s Objs. 5.)  Second, Defendant contends that his consent was not voluntary and unequivocal.  (Id.)  The Court addresses both objections below.

Defendant cites Warden, Md. Penitentiary v. Hayden, 387 U.S. 294 (1967), in support of his argument that no exigent circumstances existed in this case.  (Def.'s Objs. 4.)  Absent exigent circumstances, the Fourth Amendment prohibits law enforcement officers from entering a person's home "to effect a warrantless search or arrest."  United States v. Morgan, 743 F.2d 1158, 1161 (6th Cir. 1984) (citing Payton v. New York, 445 U.S. 573, 590 (1980)).  In Hayden, the Supreme Court explained that police officers need not "delay in the course of an investigation if [doing] so would gravely endanger their lives or the lives of others."  Hayden, 387 U.S. at 298-99.  Defendant contends that no one was endangered by Defendant's presence inside his own house.  (Def.'s Objs. 4.)  Defendant argues that "there was no indication that [he] was fleeing, was likely to be on the premises for only a short period of time, was about to destroy evidence, or was posing an immediate risk to the other

8

occupants of the house." (Id. at 5.) The Court disagrees, for the reasons discussed below.

Defendant cites the following language from Hayden in an attempt to distinguish Hayden from this case: "Speed here was essential . . . [to] [e]nsure[] that Hayden was the only man present and that the police *had control of all weapons which could be used against them or to effect an escape*." (Def.'s Objs. 4 (quoting Hayden, 387 U.S. at 299 (emphasis added)).) The Court concludes that speed was essential here. The officers learned from Frost Jr. that Defendant had shot at him. (Frost Jr. Test. 9.) Defendant, therefore, posed an immediate risk to others because he had tried to shoot his son shortly before the police arrived. See Morgan, 743 F.2d at 1163 (requiring "substantiated evidence" that the defendant "posed an impending threat to the police or to the public"). Because the officers knew that Defendant had already tried to shoot his own minor child, it was reasonable for them to believe that Defendant might try to shoot others, too. (See Hendree Test. 27 (agreeing that the situation was "pretty dangerous").) Thus, exigent circumstances were present. Cf. United States v. Saari, 272 F.3d 804, 806 n.2 (6th Cir. 2001) (explaining that exigent circumstances were not present where the police knew that no shots had been fired by the defendant). Accordingly, Defendant's objection to the warrantless arrest is OVERRULED.

9

Defendant contends that his consent was not voluntary and unequivocal. (Def.'s Objs. 4.) Defendant points to the following circumstances in support of his argument: (1) Defendant's immediate detention upon opening the side door of his house; (2) Defendant's refusal to sign a consent-to-search form; and (3) Hendree's failure to advise Defendant of his right to refuse consent.[5] (Id. at 5.)

"[I]n order to justify a search by consent, the government must prove that the consent was voluntary and unequivocal." United States v. Buckingham, 433 F.3d 508, 513 (6th Cir. 2006) (citing United States v. Worley, 193 F.3d 380, 385-86 (6th Cir. 1999)). The record shows that Defendant's oral consent was voluntarily and unequivocally given. See Worley, 193 F.3d at 386-87 (listing factors but cautioning courts that there is no "magic formula" to apply). The detention was not lengthy. (Hendree Test. 29.) The officers did not have their weapons drawn when Defendant consented to the search. (Id.) While three officers were present (and Defendant was in handcuffs), there is no evidence that any officer threatened or coerced Defendant. (Id. at 26.) Defendant's age and intelligence "indicate[] the ability to freely consent." Worley, 193 F.3d at 386. Finally, the content of Defendant's statement demonstrates

---

[5] Defendant cites no case law in support of his contention that a police officer must advise a suspect of his right to refuse consent.

10

that it was unequivocal: officers "could search his house all [they] wanted." (Hendree Test. 25.) The Court next examines whether Defendant withdrew his consent.

Defendant suggests, but does not explicitly state, that his refusal to sign a consent-to-search form operated as a retraction of his oral consent. (Def.'s Objs. 5.) A person may withdraw consent at any time. United States v. Buckingham, No. 1:04-CR-10015-T, 2006 WL 1174471, at *5 (W.D. Tenn. Apr. 30, 2006) (citing Painter v. Robertson, 185 F.3d 557, 567 (6th Cir. 1999)). "[W]hen a suspect . . . claims that he revoked or limited [his] consent before or during the challenged search," the Court asks what a reasonable person would have understood in the "exchange between the officer and the suspect." Buckingham, 2006 WL 1174471, at *5 (citing Florida v. Jimeno, 500 U.S. 248, 251 (1991)). A reasonable understanding of the exchange between Defendant and Hendree is that Defendant was merely unwilling to sign a consent-to-search form. (See Hendree Test. 32 ("[Defendant] said he would not sign it, *but we could search all that we want* because he didn't have any firearms and he had fired no shots at anybody.") (emphasis added).) The circumstances do not show that Defendant ever withdrew his oral consent. See Buckingham, 2006 WL 1174471, at *7 ("[A] refusal to execute a written consent form subsequent to voluntary oral consent does not act as an effective withdrawal of the prior

11

oral consent.") (quoting United States v. Lattimore, 87 F.3d 647, 651 (4th Cir. 1996) (internal quotations omitted)). Accordingly, Defendant's objection that his consent was not voluntary and unequivocal is OVERRULED.

## IV. Conclusion

For the foregoing reasons, after de novo review, the Court ADOPTS the Report and Recommendation in its entirety. Accordingly, Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED this 18th day of April, 2011.

                                      __/s/ Jon P. McCalla_____
                                      JON P. McCALLA
                                      CHIEF U.S. DISTRICT JUDGE